## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

PATRICK HOLLIS,               )
                                          )
               Plaintiff,     )
                                          )    CIVIL ACTION
v.                                    )
                                          )    No. 09-1273-JWL
                                          )
MICHAEL J. ASTRUE,       )
Commissioner of Social Security,   )
                                          )
               Defendant.   )
_____ )

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying disability insurance benefits (DIB) and supplemental security income (SSI) under sections 216(i), 223, 1602, and 1614(a)(3)(A) of the Social Security Act. 42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A) (hereinafter the Act). Finding error as alleged by Plaintiff in the ALJ's evaluation of Plaintiff's report of daily activities, the court ORDERS that the Commissioner's decision be REVERSED, and that judgment be entered in accordance with the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings consistent with this opinion.

## I.     Background

Plaintiff applied for DIB and SSI on March 10, 2006 alleging disability since December 20, 1999.[1]  (R. 16, 93-95, 608-11).  The applications were denied initially and upon reconsideration, and Plaintiff requested a hearing before an administrative law judge (ALJ).  (R. 16, 55, 56, 67, 606, 607).  Plaintiff's request was granted, and Plaintiff appeared with counsel for a hearing before ALJ Robert J. Burbank on May 20, 2008.  (R. 16, 25-26).  A vocational expert, Robin Cook, Ph.D., also appeared at the hearing.  Id. Testimony was taken only from Plaintiff, the vocational expert did not testify.  (R. 25-54).

On September 18, 2008, ALJ Burbank issued his decision, finding that Plaintiff has not been disabled within the meaning of the Act at any time from December 20, 1999 through the date of the decision.  (R. 16-24).  Specifically, he found that Plaintiff met the insured status requirements of the Act only through March 31, 2004, that he had not engaged in substantial gainful activity since December 20, 1999, that he has degenerative disc disease of the lumbar and cervical spine, and that he has no impairment or combination of impairments that meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  (R. 18).

_____

[1]The Commissioner asserts that at the administrative hearing Plaintiff amended his onset date to February 1, 2005, that Plaintiff's date last insured was March 31, 2004, and therefore, Plaintiff's Title II application for DIB is moot.  (Comm'r Br. 1, n.1).  Plaintiff acknowledges that he amended his onset date.  (Pl. Br. 14).  Nonetheless, the decision at issue purports to decide both the Title II and Title XVI applications, and the ALJ found that Plaintiff was not disabled from December 20, 1999 through the date of the decision.  (R. 16, 23).  Therefore, the court's opinion relates to the decision regarding both of Plaintiff's applications.  On remand, the Commissioner may address this issue if necessary or desired.

The ALJ considered and summarized the record evidence (R. 19-22), determined that Plaintiff's allegations of symptoms resulting from his impairments "are not credible to the extent they are inconsistent with the residual functional capacity assessment," (R. 21), and determined that Plaintiff has the residual functional capacity (RFC) to perform a range of light work, excluding work that requires climbing ladders, ropes, and scaffolds; that requires kneeling; or that involves concentrated exposure to extremely cold conditions. (R. 18-19). Based upon this RFC, the ALJ determined that Plaintiff is able to perform his past relevant work as an automotive services cashier. (R. 22). Alternatively, the ALJ determined that, when considering Plaintiff's age, education, work experience, and RFC, and using Medical-Vocational Guidelines (hereinafter, the grids) Rules 201.15 and 202.18 as a framework for decision-making, jobs of which Plaintiff is capable exist in the national economy in significant numbers. (R. 23). Therefore, the ALJ determined Plaintiff is not disabled within the meaning of the Act, and denied the applications. Id.

Plaintiff's request for review was denied by the Appeals Council on July 9, 2009. (R. 6-8, 11). Therefore, the ALJ's decision is the final decision of the Commissioner. (R. 6); Cowan v. Astrue, 552 F.3d 1182, 1184 (10th Cir. 2008). Plaintiff timely filed a complaint in this court seeking judicial review pursuant to 42 U.S.C. § 405(g). (Doc. 1).

## II. Legal Standard

The court's jurisdiction and review are guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1051-52 (10th Cir. 2009) (citing 42 U.S.C. § 405(g)). Section 405(g) of the Act provides, "The findings of the Commissioner as to any fact, if supported by

substantial evidence, shall be conclusive."  The court must determine whether the factual

findings are supported by substantial evidence in the record and whether the ALJ applied

the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord,

White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  Substantial evidence is more than

a scintilla, but less than a preponderance, and it is such evidence as a reasonable mind

might accept to support a conclusion.  Wall, 561 F.3d at 1052; accord, Gossett v. Bowen,

862 F.2d 802, 804 (10th Cir. 1988).  The court may "neither reweigh the evidence nor

substitute [its] judgment for that of the agency."  Bowman v. Astrue, 511 F.3d 1270, 1272

(10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800

(10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005).

The determination of whether substantial evidence supports the Commissioner's decision,

however, is not simply a quantitative exercise, for evidence is not substantial if it is

overwhelmed by other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at

804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

     An individual is under a disability only if that individual can establish that he has a

physical or mental impairment which prevents him from engaging in substantial gainful

activity and is expected to result in death or to last for a continuous period of at least

twelve months.  Thompson v. Sullivan, 987 F.2d 1482, 1486 (10th Cir. 1993) (citing 42

U.S.C. § 423(d)).  The claimant's impairments must be of such severity that he is not only

unable to perform his past relevant work, but cannot, considering his age, education, and

work experience, engage in any other substantial gainful work existing in the national economy.  42 U.S.C. § 423(d)(2)(A).

The Commissioner uses a five-step, sequential process to evaluate disability.  20 C.F.R. §§ 404.1520, 416.920 (2008); Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Id. (quoting Lax, 489 F.3d at 1084.)

In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment, and whether the severity of his impairment(s) meets or equals the severity of any impairment in the Listing of Impairments.  Williams, 844 F.2d at 750-51.  If the claimant's impairments do not meet or equal a listed impairment, the Commissioner assesses his RFC.  20 C.F.R. §§ 404.1520(e), 416.920(e).  This assessment is used at both step four and step five of the sequential process.  Id.

After assessing claimant's RFC, the Commissioner evaluates steps four and five-- whether claimant can perform his past relevant work, and whether, when considering vocational factors of age, education, and work experience, he is able to perform other work in the economy.  Wilson, 602 F.3d at 1139 (citing Lax, 489 F.3d at 1084).  In steps one through four the burden is on claimant to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.

At step five, the burden shifts to the Commissioner to show jobs in the national economy

within Plaintiff's capacity. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

Plaintiff claims the Commissioner erred in evaluating the medical evidence from

the report of Dr. Smith, and the treatment notes of Dr. Eddy and Dr. Whitmer; and in

evaluating the credibility of Plaintiff's allegations of symptoms. The Commissioner

argues that the ALJ properly evaluated the credibility of Plaintiff's allegations, and

properly considered the medical evidence in assessing Plaintiff's RFC. The court finds

error in the ALJ's evaluation of Plaintiff's activities of daily living, and remands for a

proper and complete credibility evaluation. The court begins, as did Plaintiff, with

consideration of the medical evidence, because a proper credibility determination rests, at

least in part, on a proper evaluation of the medical evidence.

Plaintiff also cites legal authority for the proposition that it is improper to rely

upon the grids when clinical findings support the claimant's complaints of pain. Id. at 2

(citing (without pinpoint citation) Pasillas v. Shalala, 993 F. Supp. 1327 (D. Colo. 1998)).

He asserts that the ALJ erroneously relied upon the grids. However, he provided no

further argument regarding this error, and does not demonstrate how the ALJ allegedly

erred in this regard. Therefore, he has waived this argument. Wall, 561 F.3d at 1066

(undeveloped issue is waived); Franklin Sav. Corp. v. U.S., 180 F.3d 1124, 1128 n.6

(10th Cir. 1999) (arguments presented superficially are waived); see also, Sports Racing

Servs., Inc. v. Sports Car Club of America, Inc. 131 F.3d 874, 880 (10th Cir. 1997)

(dismissing claims which were never developed, with virtually no argument presented);

and, Ortiz v. Apfel, 39 F. Supp. 2d 1275, 1285-86 (D. Kan. 1998) ("Parties may waive issues, arguments, and objections by not presenting them to this court.").

## III.    Evaluation of the Physician Report and the Treatment Notes

Plaintiff argues that an ALJ "may not pick and choose from medical evidence but must discuss all relevant evidence in the determination of the Claimant's residual functional capacity" (Pl. Br. 2) (citing (all without pinpoint citation) Barnett v. Apfel, 231 F.3d 687 (10th Cir. 2000); Brant v. Barnhart, 506 F. Supp. 2d 476 (D. Kan. 2007); Owen v. Chater, 913 F. Supp. 1413 (D. Kan. 1995);[2] and Pettyjohn v. Sullivan, 776 F. Supp. 1482 (D. Colo. 1991)), and claims that the ALJ improperly picked and chose among the medical evidence in the report of Dr. Smith, and in the treatment notes of Drs. Eddy and Whitmer, discussing only that evidence which supported his decision, and ignoring contrary evidence.  (Pl. Br. 2-6).  Plaintiff does not argue that the ALJ ignored the medical opinions of the physicians.  He argues, "When all relevant evidence is considered, it is clear that the ALJ erroneously found Claimant capable of light work activity and erroneously relied upon the medical/vocational grids to determine Claimant is not disabled."  Id. at 2.  Plaintiff then points to evidence contained in the medical records of Drs. Smith, Eddy, and Whitmer, which was allegedly ignored by the ALJ, and which, in Plaintiff's view, demonstrates that Plaintiff is incapable of light work and that the ALJ did not consider all of the relevant evidence in making the RFC assessment.  Id. at 2-6.

------

[2]Counsel is cautioned to use more care in citation, as his citations to both Owen and Pasillas contain typographical errors, requiring the court to search to find the correct citation.

The Commissioner argues that the decision demonstrates the ALJ properly considered the medical evidence. (Comm'r Br. 11). He explains that the ALJ is not required to discuss every piece of evidence , but his function is to resolve conflicting medical evidence. Id. at 12 (citing Wall, 561 F.3d at 1067; Frantz v. Astrue, 509 F.3d 1299, 1303 (10th Cir. 2007); and Whelchel v. Barnhart, 94 Fed. Appx. 703, 709 (10th Cir. 2004)). Thereafter, the Commissioner cites record evidence from the medical records of Drs. Smith, Eddy, and Whitmer which, in his view, support the ALJ's RFC assessment. Id. at 12-14.

Plaintiff appears to be laboring under the misapprehension that an ALJ must discuss every piece of record evidence relevant to the RFC at issue. (Pl. Br. 2) ("An ALJ . . . must discuss all relevant evidence."). That is not the standard. The record must demonstrate that the ALJ considered all of the evidence, but he is not required to discuss every piece of relevant evidence. Clifton v. Chater, 79 F.3d 1007, 1009-1010 (10th Cir. 1996); accord, Barnett, 231 F.3d at 689 ("The ALJ is charged with carefully considering all the relevant evidence.") (emphasis added). "[I]n addition to discussing the evidence supporting his decision, the ALJ must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." Clifton, 79 F.3d at 1010. Nonetheless, as Plaintiff argues, an ALJ may not pick and choose from a medical report, using only those parts favorable to his decision. Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004). Nor may he "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence." Hardman v. Barnhart, 362 F.3d 676, 681 (10th Cir. 2004) (emphasis added).

### A.    Dr. Smith

Dr. Smith is a physician who performed a consultative examination of Plaintiff and provided a report of that examination to the Disability Determination Service.  (R. 486-88).  The court reproduces here the "Physical Examination" section of that report:

> Examination today reveals a muscular gentleman who does not appear to have any atrophy at the upper and lower extremities.  He is able to walk moderately, but somewhat slowly and stiffly.  He can walk on his heels and toes, but says that increases his back pain.  Reflexes are symmetric in the lower extremities, 1+ to the knees, ankles, and medial hamstring.  Straight leg raising is normal, but he complains of back pain, but not radicular pain.  Strength and toe extension is normal.  Examination of the upper extremities reveals strength to be normal.  On manual muscle testing, he complains of back pain when trying to pull hard.  Grip strength shows 75 pounds on the right hand and 35 pounds on the left.  Reflexes are somewhat hyperactive on the left compared to the right.  The right appears to be normal. He said at the right side, his walk is affected by his cervical disc problem.
>
> Again, he complains of having fibromyalgia, but the only tenderness could be found is over the medial anterior elbows bilaterally.  No other tender points.  Examination of the scapula reveals winging of the right scapula with provocative maneuvers consistent with serratus anterior type of weakness or C7 weakness.  Cervical motion is quite limited.  He can normally rotate to the left to about 10 degrees and to the right of about 40 degrees.  Examination of lumbar spine reveals to be quite stiff.  Extension is only about 15 degrees and flexion to 25 degrees.  He tends to have a slight curvature of the lumbar spine when bending forward.

(R. 487-88).

The ALJ summarized Dr. Smith's report:

> Frederick Smith, D.O., examined the claimant in May 2006 and, like Dr. Eddy, noted no serious abnormality other than complaints of pain and restriction of motion.  Dr. Smith stated that the claimant additionally complained of having fibromyalgia, but that there was no tenderness other than over the medial anterior elbows.

(R. 20).

Plaintiff complains that the ALJ ignored "Doctor Smith's observations demonstrative of significant limitations." (Pl. Br. 2). Plaintiff then proceeds to include a listing of virtually everything in Dr. Smith's report of examination, including Plaintiff's history and his complaints reported to the physician. Id. at 2-3. He summarizes: "This demonstrative evidence indicates Claimant could not perform light work activity, and clearly undermines the ALJ's conclusion." Id. at 3. The court does not agree.

It is clear that in the section of the decision quoted, the ALJ was summarizing Dr. Smith's particular findings with regard to Plaintiff's condition, and the limitations resulting therefrom. As the ALJ noted, Dr. Smith reported Plaintiff's limitations in motion, Plaintiff's complaints of pain, and Plaintiff's complaint of fibromyalgia without significant confirmatory tenderness. Earlier in his decision, the ALJ had summarized the medical evidence regarding Plaintiff's medical history; his degenerative disc disease in the cervical and lumbar spine; surgery involving his cervical spine; and the x-ray, CT scan, and MRI results. (R. 19-20). He had specifically noted the post-operative x-rays of Plaintiff's cervical spine, a CT scan showing bilateral spondylolysis of L5, and an MRI study showing a small focal disc herniation with a small disc fragment at L4-5 and bilateral spondylosis at L5. (R. 20). Therefore, there was no need for the ALJ to once again state this cumulative evidence. In context, the ALJ's summary of Dr. Smith's report is a fair summarization, and Plaintiff has not shown that the ALJ rejected or chose not to rely upon any portion of Dr. Smith's report, much less that the portions he rejected

or chose not to rely upon are either uncontroverted or significantly probative. Moreover, although Plaintiff has the burden of proof regarding RFC, he has not shown how Dr. Smith's report demonstrates significant limitations other than those acknowledged by the ALJ, or how it demonstrates that Plaintiff cannot perform the RFC assessed by the ALJ.

## B. Dr. Eddy

The record contains notes indicating Dr. Eddy treated Plaintiff from February 11, 2005 through March 15, 2006. (R. 475-85). The ALJ summarized Dr. Eddy's treatment:

> Victor Eddy, M.D., examined the claimant in February 2005 and found no significant abnormality other than complaints of pain and limitation of motion. Dr . Eddy noted during that same month that MRI studies of the claimant's neck and back showed minimal disease except at L4-5 and C6-7. He further noted, in April 2005, that the claimant had been taking more pain medication than prescribed. In November 2005, the doctor noted that the claimant had lied about a pain medication refill.

(R. 20) (citations to the record omitted) (emphases added).

Plaintiff claims "the ALJ trivializes the record to reach th[e] conclusion" that Dr. Eddy's treatment notes showed no serious abnormality other than complaints of pain and limitation of motion. (Pl. Br. 3). Plaintiff summarized Dr. Eddy's examination made on February 11, 2005, id., quoted the reports of the MRI's Dr. Eddy ordered on Plaintiff's cervical and lumbar spine, and quoted Dr. Eddy's notes from February 25, 2005 stating the MRIs "showed 'minimal disease in his back, except at L4/5 level and neck at the C6/7 level.'" Id. at 4 (emphasis in Plaintiff's brief) (quoting (R. 481)). Plaintiff then details the history of his cervical fusion surgery, notes Dr. Eddy subsequently referred him to a surgeon for lumbar surgery, and notes that Dr. Eddy's final treatment note reported

Plaintiff stopped working because of back pain.  Id. at 4-5.  He concludes by stating, "The ALJ conclusion that Doctor Eddy's progress notes indicated 'no significant abnormality' is incomprehensible in light of the diagnostics, surgical intervention, and prescription drug used to attempt pain management.  Dr. Eddy's notes are clear Claimant continued to have severe pain in the cervical and lumbar spine after surgery."  Id. at 5.

Plaintiff misunderstands the ALJ's summary of Dr. Eddy's notes.  First, the ALJ did not state Dr. Eddy found complaints of pain and limitation of motion were Plaintiff's only significant abnormalities, rather the ALJ stated that when Dr. Eddy examined Plaintiff in February 2005, he found "no significant abnormality other than complaints of pain and limitation of motion."  (R. 20).  As Plaintiff acknowledges, February 11, 2005 was Dr. Eddy's initial examination of Plaintiff.  (Pl. Br. 3) ("Claimant sought treatment with Dr. Eddy on February 11th 2005").  In effect, the ALJ stated that pain and limitation of motion were the only significant abnormalities noted on Dr. Eddy's initial examination.  Further, the ALJ acknowledged that MRI results Dr. Eddy obtained later in February 2005 revealed additional significant problems at L4-5 and C6-7.  (R. 20) ("Dr . Eddy noted during that same month that MRI studies of the claimant's neck and back showed minimal disease except at L4-5 and C6-7.").  Moreover, the ALJ had specifically discussed these MRI results earlier on the same page of the decision.  Id. ("An MRI of his cervical spine done in February 2005 showed disc bulging at C5-6 and C6-7, with some narrowing in the central spinal canal and narrowing of the exit foramen bilaterally, of significant degree, at C6-7."  And, "An MRI study of the claimant's lumbar spine done in

February 2005 revealed a small focal disc herniation with a small disc fragment at L4-5 without significant mass effect or spinal stenosis, as well as bilateral spondylosis at L5.").

Second, Plaintiff argues that the ALJ understood Dr. Eddy to report that the MRIs showed minimal disease in Plaintiff's entire back. (Pl. Br. 4) He argues that the decision reveals the ALJ was wrong in this understanding. Id. As quoted above, the ALJ stated, "Dr. Eddy noted . . . MRI studies . . . showed minimal disease <u>except at L4-5 and C6-7</u>." (R. 20) (emphasis added). This is identical to language quoted by Plaintiff from Dr. Eddy's notes. (Pl. Br. 4) (quoting (R. 481) ("minimal disease in his back, <u>except at L4/5 level and neck at the C6/7 level</u>." (emphasis in Plaintiff's brief)). The court finds that by this phrasing, the ALJ made it clear that he understood Dr. Eddy to find <u>significant abnormalities</u> at L4-5 and C6-7, but minimal disease <u>elsewhere in Plaintiff's back</u>. The decision is clear that the ALJ accepted these significant abnormalities found by Dr. Eddy: complaints of pain, limitation of motion, and spinal abnormalities at L4-5, and C6-7.

As discussed above, the ALJ had already discussed Plaintiff's history of cervical spine surgery. (R. 19-20). Moreover, the ALJ had acknowledged Plaintiff's testimony that he had declined surgical intervention on his lumbar spine because there was no guarantee it would fix his back. (R. 19). As with Dr. Smith's report, the court finds that the ALJ's summary of Dr. Eddy's treatment notes is a fair summarization, and in context does not pick and choose portions of the notes while ignoring other portions of those notes. Finally, Plaintiff has not shown how Dr. Smith's report demonstrates significant limitations other than those acknowledged by the ALJ, or how it demonstrates that

13

Plaintiff cannot perform the RFC assessed by the ALJ.  The fact that Plaintiff continues to experience pain in the cervical and lumbar spine is not alone determinative of disability.  As the Tenth Circuit has recognized, "disability requires more than mere inability to work without pain."  Ray, 865 F.2d at 225 (quoting Gossett, 862 F.2d at 807; and Brown v. Bowen, 801 F.2d 361, 362 (10th Cir. 1986)).

### C.     Dr. Whitmer

Dr. Whitmer treated Plaintiff from April 12, 2006 through April 17, 2008.  (R. 494-508, 564-87, 590-605).  The ALJ discussed Dr. Whitmer's treatment notes:

> Ronald Whitmer, D.O., indicated in February 2007 that he was somewhat "suspicious"  that the claimant was abusing prescription medication.  In March 2007, Dr. Whitmer noted that the claimant had failed to keep an appointment with another physician to whom he had been referred.  The doctor noted in May 2006 that the claimant was taking more OxyContin than had been prescribed for him.  He made a similar finding in June 2007 and refused to refill the claimant's prescription early as requested.  In April 2008, Dr. Whitmer noted that the claimant had chronic back pain, but did fairly well on oxycodone.

(R. 21) (citations omitted).

Plaintiff claims, "The ALJ did not discuss the observations and findings of Doctor Whitmer."  (Pl. Br. 5).  Plaintiff provides a summary of Dr. Whitmer's treatment notes chronicling chronic back pain and muscle spasms; degenerative joint disease; hypertension; pain with movement of the spine; ankle pain; limited range of motion in the spine; problems with flexion, extension, side bending, and rotation of the spine; radicular pain; and walking with a limp.  Id. at 5-6.  Plaintiff provides a fair summary of Dr. Whitmer's notes, except that he stated one progress note showed Plaintiff "was having

problems walking and fell from the front porch steps." Id. at 5 (citing (R. 567)). The note to which Plaintiff cites states, "Patient is in here today having fallen down off of a porch and is having a lot of leg pain." (R. 567). Dr. Whitmer refused to give additional medication for the leg pain and stated, "We told him that he's going to have to use moist heat to that, he's going to have to just take Advil or some other type of pain medication since he is using all of his Percocet up but according to the drug contract, we are not going to give it early and there is no reason for this patient to have it early because he only has a superficial abrasion to his leg that in just a normal person would not be painful at all." Id. Nowhere in the note does it state, or even suggest that Plaintiff fell from the porch because he was having problems walking. There are many factors which might cause one to fall off of a porch, and the treatment note does not implicate any one of them. Plaintiff's statement in this regard in his brief is overreaching, and is not supported by the record evidence.

Plaintiff concludes his argument, "Doctor Whitmer's history with the Claimant demonstrates that Claimant has lumbar spine pain which severely limits walking and any movement of the back." Id. at 6. This conclusion is simply not supported by the record evidence or by Dr. Whitmer's treatment notes. As Plaintiff's summary suggests, Dr. Whitmer's treatment notes reveal that plaintiff has pain in both the cervical and lumbar spine, has radicular pain and ankle pain, walks with a limp, has a limited range of motion in the spine, and has problems with flexion, extension, side bending, and rotation of the

spine. However, nowhere in his treatment notes does Dr. Whitmer suggest that these findings <u>severely</u> limit walking and <u>any</u> movement of the back.

Although the ALJ did not specifically discuss all of the observations of Dr. Whitmer, the court's discussion above reveals that many of Dr. Whitmer's observations are cumulative to the observations of Drs. Smith and Eddy, and of the medical records otherwise summarized in the decision. The decision makes it clear that the ALJ <u>considered</u> Dr. Whitmer's treatment notes as he is required to do. He cited five of Dr. Whitmer's treatment notes (two of which were cited in Plaintiff's summary of those notes). (R. 21) (citing Ex. F, pp. 390, 393, 396, 406, 419 (R. 567, 572, 575, 578, 591)). Because those observations contained in Dr. Whitmer's treatment notes which the ALJ did not specifically discuss are merely cumulative of other evidence which the ALJ did discuss, Plaintiff has not shown that the ALJ rejected or chose not to rely upon any portion of Dr. Whitmer's treatment notes, much less that the portions he rejected or chose not to rely upon are <u>either</u> uncontroverted or significantly probative. Plaintiff has shown no error in the ALJ's evaluation of the report of Dr. Smith or of the treatment notes of Drs. Eddy or Whitmer. He has not shown that the ALJ picked and chose portions of the medical evidence favorable to his decision while ignoring contrary evidence.

## IV.    Evaluation of the Credibility of Plaintiff's Allegations of Symptoms

Plaintiff claims the ALJ erred in his evaluation of the credibility of Plaintiff's allegations of symptoms resulting from his impairments. He suggests three reasons to find error: (1) The record evidence does not support the ALJ's finding that Plaintiff

completed a Social Security Administration (SSA) questionnaire showing daily activities inconsistent with his allegations of disability; (2) "There is no evidence in the record which supports" the ALJ's finding that medication controls Plaintiff's pain; and (3) The ALJ erroneously interpreted the treatment notes of Dr. Eddy and Dr. Whitmer and improperly relied upon evidence of drug and alcohol abuse from an earlier period in finding "drug-seeking behavior." The Commissioner restates the ALJ's reasons for finding Plaintiff's allegations not credible, and points to what he believes is substantial evidence in the record in support of the finding.

An ALJ's credibility determinations are generally treated as binding on review. Talley v. Sullivan, 908 F.2d 585, 587 (10th Cir. 1990). "Credibility determinations are peculiarly the province of the finder of fact" and will not be overturned when supported by substantial evidence. Hackett, 395 F.3d at 1173. In reviewing the ALJ's credibility determinations, the court will usually defer to the ALJ on matters involving witness credibility. Glass v. Shalala, 43 F.3d 1392, 1395 (10th Cir. 1994). However, the Tenth Circuit has condemned the practice of dismissing plaintiff's allegations of symptomatology on the strength of a boilerplate recitation of the law. White, 287 F.3d at 909 (citing Kepler v. Chater, 68 F.3d 387, 390-91 (10th Cir. 1995) (where the ALJ merely notes the law governing assessment of credibility, discusses the evidence in general terms, and finds in a conclusory fashion that the evidence does not support plaintiff's allegations of disabling severity, remand is necessary to allow the ALJ to make specific findings linking his credibility findings to the evidence)).

To successfully challenge an ALJ's credibility finding, Plaintiff must demonstrate the error in either the ALJ's rationale or in a particular finding; the mere fact that there is evidence which might support a contrary finding will not establish error in the ALJ's determination. "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. We may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." Lax, 489 F.3d at 1084 (citations, quotations, and bracket omitted); accord, Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966). "However, '[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.'" Hackett, 395 F.3d at 1173 (quoting Huston v. Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988)). Where the ALJ reaches a reasonable conclusion supported by substantial evidence in the record, the court will not reweigh the evidence and reject that conclusion even if it might have reached a contrary conclusion in the first instance. Finally, a credibility determination requires consideration of all the credibility factors "in combination." Huston, 838 F.2d at 1132 n.7. Therefore, when a factor relied upon by the ALJ is unsupported by the record, generally the court will remand and will not reweigh the remaining factors to determine whether they are sufficient by themselves to support the credibility determination. Bakalarski v. Apfel, No. 97-1107, 1997 WL 748653, *3 (10th Cir. Dec. 3, 1997).

The court agrees with Plaintiff's first credibility argument (the evidence does not support the ALJ's finding that Plaintiff's daily activities are inconsistent with his allegations of disability). Because this error requires remand for consideration of all of the credibility factors in combination, the court need not pursue Plaintiff's other arguments, and Plaintiff may make them to the Commissioner on remand.

The ALJ found Plaintiff's allegations of symptoms not credible, and in the decision the court discerns five reasons for that finding. (1) Plaintiff has a history of drug and alcohol abuse and drug-seeking behavior, and has lied to his doctors with regard to his manner of taking medications. (2) Plaintiff's daily activities are inconsistent with his allegations of disability. Medical records show that: (3) Plaintiff's pain is capable of being controlled by medication, and (4) after his cervical spine surgery Plaintiff has had no treatment for his spine other than prescription drugs. And, (5) SSA earning records show Plaintiff has never been strongly motivated to work. (R. 20-21). With regard to Plaintiff's daily activities, the ALJ made the following analysis.

> In completing a Social Security Administration questionnaire as part of the application for benefits, the claimant stated that he was able to take short walks, go shopping with friends and family members, prepare simple meals, do some yard work, leave his residence 1-2 times a day, ride in a car, manage his finances, socialize with friends or family members in person or on the telephone and spend time watching television. He further stated that he had no difficulty getting along with other people. These statements show that he engages in a range of daily activities requiring considerable physical and mental exertion and are inconsistent with his allegation that he is disabled.

(R. 21).

The ALJ provided no citation to the record in his analysis. Plaintiff points to three SSA forms in which Plaintiff described his daily activities, two "Disability Reports - Appeal," dated July 10, 2006, and July 12, 2006 (R. 142-48, 151-56), and a "Function Report - Adult," dated July 22, 2006. (R. 157-64). He argues that none of these forms specifically correlates with the ALJ's assessment of daily activities, and that the ALJ picked and choose among Plaintiff's statements to demonstrate inconsistencies between the statements and Plaintiff's allegations of disability. (Pl. Br. 7-9). The court has identified three additional SSA forms completed by Plaintiff and including references to daily activities: A "Disability Report - Adult," undated (R. 110-17), and two "Disability Reports - Appeal," dated March 21, 2006, and October 5, 2006. (R. 126-131, 165-71). None of the SSA forms correlates to any degree with the information summarized in the decision, except for the "Function Report," dated July 22, 2006. (R. 157-64).

In that report, Plaintiff stated, "I lay on couch watch television . . . Sometimes go to store with family and friends," (R. 157), "Some time put soup in microwave," (R. 159), "I try to cut grass but can't do it makes my back and hip and legs hurt real bad." (R. 159). He stated that he goes outside "1-2 times a day to sit on porch." (R. 160). He checked boxes to indicate that he rides in a car to travel, and that he is <u>able to</u> pay bills, count change, handle a savings account, and use a checkbook/money orders. <u>Id.</u> He stated that his only hobby was "watching TV," that he spends time with others "in person [and] on phone," and that he does these things "at home during the day." (R. 161). In the broadest and most general sense, the "Function Report" confirms the ALJ's statement regarding

Plaintiff's daily activities, but in no way does it lead to the ALJ's conclusion that "These statements show that he engages in a range of daily activities requiring considerable physical and mental exertion and are inconsistent with his allegation that he is disabled."

As a matter of law in the Tenth Circuit, the minimal daily activities upon which the ALJ relied cannot provide substantial evidence that Plaintiff does not suffer disabling symptoms. Thompson, 987 F.2d at 1490. "The 'sporadic performance [of household tasks or work] does not establish that a person is capable of engaging in substantial gainful activity.'" Id. (quoting Frey v. Bowen, 816 F.2d 508, 516-17 (10th Cir. 1987)). Additionally, the ALJ pulled the statements out of context, and failed to mention other statements Plaintiff included on the form: "When I get up I soak in bath tub full of hot water to help with my back pain. I lay on couch watch television. I then try to take a walk but can't go to far because I start to hurt in lower back down legs, and right hip and left ankle. So I stay in as much as possible. Sometimes go to store with family and friends." (R. 157). "If I move the wrong way, Try to turn over, I wake up with sharp pain in back and down the legs." (R. 158). "Sometimes need help with putting shoes [and] socks on. Always need help getting up out of bath tub." (R. 158). "After bowel movement very hard to wipe self some times need to shower after I'm done." (R. 158). "I start and do very little [yard work], my son has to finish for me." (R. 159). Plaintiff explained why he cannot prepare meals: "Because afraid that I might drop something and burn my self because if I move wrong way I get sharp pain & weakness in legs." (R. 159). He explained why he did not do house or yard work: "I can't move around that

21

good, I have a lot of weakness & pain that goes down my legs." (R. 160). "At store I need to sit in a drive cart." (R. 160). Plaintiff reported he goes "nowhere" on a regular basis. (R. 161).

Further, the ALJ did not mention the limitations Plaintiff included in the other SSA forms he completed: "When I stand up too fast or move the wrong way I get a sharp pain that goes right across lower back & legs." (R. 126), see also (R. 142). "When in shower I need someone in the rest room with me because my legs give out on me." (R. 129). "I can't even walk from my living room to the restroom with out my legs giving out, sharp pain in lower back and down back of legs." (R. 129), see also (R. 146, 165). Ankles hurt and swell, can't tie shoes, can't wipe self in restroom. (R. 151, 154, 165, 169).

As Plaintiff argues, the ALJ picked and chose among Plaintiff's statements in the "Function Report," and among various SSA forms, choosing portions of Plaintiff's reports that were favorable to the ALJ's credibility finding, and ignoring that which was unfavorable. This is error, and requires remand for the ALJ to properly evaluate Plaintiff's daily activities and to properly evaluate all of the credibility factors in combination to determine whether Plaintiff's allegations of symptoms are credible in the circumstances. On remand, Plaintiff may also make his other arguments regarding the credibility determination.

**IT IS THEREFORE ORDERED** that the Commissioner's decision is REVERSED, and that judgment shall be entered in accordance with the fourth sentence

of 42 U.S.C. § 405(g) REMANDING the case for further proceedings consistent with this opinion.

Dated this 20th day of October 2010, at Kansas City, Kansas.


s/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**